McCabe v. Standard Oil Co.

---

No. 27,019.

FRANCIS McCABE, *Appellee,* v. STANDARD OIL COMPANY and CHARLES DEAN, *Appellants.*

SYLLABUS BY THE COURT.

HIGHWAYS—*Negligent Driving of Motor Truck—Injury to Operator of Road Drag—Evidence—Special Findings.* In an action for personal injuries alleged to have been caused by the negligent driving of an automobile truck past a four-horse team and road drag on a public road, the proceedings examined and *held,* the evidence and special findings of the jury required judgment in favor of the defendants.

Appeal from Crawford district court; DANIEL H. WOOLLEY, judge. Opinion filed January 8, 1927. Reversed.

*Charles D. Welch,* of Coffeyville, for the appellants.
*C. O. Pingry, C. S. Denison* and *E. V. Bruce,* all of Pittsburg, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: The action was one to recover damages for personal injuries. Plaintiff prevailed, and defendants appeal.

The facts are substantially as follows: The plaintiff was engaged in dragging the country club road south of Pittsburg. He was riding a drag drawn by four horses. Defendant's truck, driven by

Motor Vehicles, 28 Cyc. p. 47 n. 20.

the defendant Dean, approached from the rear. The main traveled portion of the road was made of chat, eighteen feet wide, with a shoulder of dirt approximately fourteen inches on either side. Beyond each shoulder was a ditch about two feet deep. A few inches east of the graveled portion of the road, near where the accident occurred stood a power-line pole. Extending angularly to the south from the top of the pole was a guy wire anchored in the dirt shoulder about twelve or fifteen inches east of the graveled part of the road and about twelve feet from the bottom of the pole.

The drag on which the plaintiff was riding consisted of two bars running crossways of the road, connected together by angle braces. It was eight feet seven inches wide. It had a bar lever in the center for the purpose of regulating its operation. The doubletrees by which the horses pulled the drag were thirteen feet seven inches wide. Defendant's truck was five feet nine inches wide.

The plaintiff was proceeding north, and was almost to the guy wire when he saw Dean approaching with the truck some seventy-five feet away. When Dean was about thirty-five feet distant he sounded his horn and plaintiff turned his team to the right, allowing the truck to pass. At about the time the truck passed the drag, one of the traces of the right-hand horse came in contact with the guy wire. At about the same time, the horse on the left shied toward the right, forcing the other horses toward the right, and the right-hand horse made a lunge pulling the drag up onto the guy wire. The plaintiff was thrown in such a way that his leg went through the drag and was broken in two places. He also suffered a rupture.

It was alleged that the defendant Dean, while in charge of the motor truck, instead of approaching the plaintiff and his horses at a reasonable and prudent and careful rate of speed and without regard to the condition of the road, negligently and carelessly attempted to pass at a high and dangerous rate of speed—twenty miles per hour—without giving plaintiff a reasonable opportunity to stop or control his horses, etc.

The jury returned a general verdict for plaintiff for $6,750, and answered special questions as follows:

"Q. 1. Did McCabe turn or drive his team to the right to let the truck past on the left, prior to the time the truck attempted to pass? A. Yes.

"Q. 2. If you find there was anything in the actions of McCabe's team which indicated that they were not under control at the time when the truck started to pass, please state what it was. A. No.

"Q. 3. At what rate of speed do you find the truck traveled in passing Mc-Cabe's team?  A. Miles per hour, (11) eleven.

"Q. 4. Do you find that prior to the time the truck attempted to pass, that McCabe knew of the presence of said guy wire on the east side of the road?  A. Yes.

"Q. 5. At the time McCabe's attention was first attracted to said truck approaching behind him, did McCabe know that said truck, if it passed, would necessarily have to pass close to his team?  A. Yes.

"Q. 6. If McCabe had desired the defendant Dean not to pass his team, did McCabe have an opportunity, after his attention was first attracted to the truck approaching from the rear, to signal to the defendant Dean by raising his hand?  A. Yes.

"Q. 7. Where was said truck with reference to the horses at the time plaintiff's horse lunged?  Give the distance.  A. At the left of horses, (2) feet.

"Q. 8. Do you find that McCabe could have stepped off of said road drag at or prior to the time said truck started to pass and thus have been in a place of safety while said truck was passing?  A. No.

"Q. 9. Do you find that plaintiff would have been injured if it had not been for the presence of said guy wire?  A. No.

"Q. 10. If you find that the defendants were guilty of any negligence which caused plaintiffs injury, then please state what that negligence was.  A. Driving too fast and too close, under the circumstances and the narrowness of the road."

Error is assigned because the court refused judgment for defendants on the special findings.

The plaintiff testified that he had been dragging the country club road for fifteen years; that the guy wire had been there four years during that time; that he had seen it a good many times and knew where it was. From the evidence and findings it is clear that plaintiff knew of the presence and location of the guy wire; knew when the truck was seventy-five feet behind him and was approaching; knew that if it passed it must necessarily do so close to his team; and knowing it was approaching, turned or drove his team to the right to let it pass. If he had desired defendant Dean not to pass, he had an opportunity to signal to him to stop. There was nothing in the action of plaintiff's team which indicated to Dean that it was not under control at the time he started to pass. He passed at a rate of only eleven miles per hour at a distance of two feet from the team. In addition to the special findings, there was evidence that Dean sounded his horn when thirty-five feet to the rear of plaintiff; that the entire road was practically of uniform width; that automobiles had been passing plaintiff's team on this road in both directions; that Dean did not know of the presence of the guy wire and did not see it until after the accident. From all of which, we are of opinion that

defendant Dean, in passing the plaintiff's road drag, used reasonable and ordinary care under the circumstances in which he was placed. The evidence and special findings show clearly that the plaintiff, at least impliedly, invited Dean to pass. Knowing the location of the guy wire, he remained standing upon his moving road drag as he approached it, turned his team to the right without indicating to Dean by signal or otherwise that he should stop. His action at least assured Dean that he had no objections to his passing. This occurred after Dean had signaled to him by sounding his horn, indicating his desire to pass. Under all the circumstances, it may be said that there was negligence on the part of the plaintiff, while Dean was absolved from negligence in passing.

The situation is somewhat emphasized when it is considered that the plaintiff was doing his work with a team accustomed for years to dragging the road and accustomed to being frequently passed in each direction by automobiles.

Under all the circumstances, we are of opinion that the conduct of the defendant Dean was such as would have been employed by an ordinarily prudent and careful person under like circumstances. Other questions presented in the briefs need not be discussed.

The judgment is reversed and the cause remanded, with instructions to render judgment for the defendants.